**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1535-16T3

CHRISTINE MINSAVAGE for
DAVID MINSAVAGE (deceased),

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, TEACHERS'
PENSION AND ANNUITY FUND,

    Respondent-Respondent.

_____

              Argued May 30, 2018 — Decided June 15, 2018

              Before Judges Hoffman and Mayer.

              On appeal from the Board of Trustees of the
              Teachers' Pension and Annuity Fund, Department
              of Treasury, TPAF No. 1-421704.

              Daniel J. Zirrith argued the cause for
              appellant (Law Offices of Daniel J. Zirrith,
              LLC, attorneys; Daniel J. Zirrith, of counsel
              and on the briefs; Jeffrey J. Berezny, on the
              briefs).

              Jeff S. Ignatowitz, Deputy Attorney General,
              argued the cause for respondent (Gurbir S.
              Grewal, Attorney General, attorney; Melissa H.
              Raksa, Assistant Attorney General, of counsel;
              Jeff S. Ignatowitz, Deputy Attorney General,
              on the brief).

PER CURIAM

Appellant Christine Minsavage sought to change the retirement option her deceased husband chose so she could receive survivor retirement benefits rather than reimbursement of her husband's pension contributions. Appellant now appeals from the November 4, 2016 final decision of respondent, the Board of Trustees of the Teachers' Pension and Annuity Fund (Board), denying her request to change the retirement option her husband selected. We affirm.

I

David Minsavage (decedent) worked for nearly twenty-five years at Hanover Park High School (school), beginning in 1990. In August 2014, decedent was diagnosed with terminal pancreatic cancer.

In September 2014, decedent contacted the Division of Pensions and Benefits (Division) for assistance in setting up his member benefits online system (MBOS) account. Around October 2014, decedent contacted the New Jersey Education Association (NJEA) to discuss his retirement options. Appellant certifies she and decedent notified NJEA of decedent's terminal cancer diagnosis at that time. According to appellant, the NJEA representative provided decedent with screen shots of a sample MBOS retirement application and instructed decedent on the options he should choose by highlighting selections on the sample application; decedent

followed the NJEA representative's directions, and "on or about November 17, 2014," filed an application for early retirement.[1]

Decedent continued working at the school until mid-December 2014. On March 16, 2015, the school filed a certification of services and final salary retirement form, which indicated decedent would retire on July 1, 2015 — the date he would attain eligibility for early retirement, which requires twenty-five years of service.

On April 9, 2015, decedent passed away after twenty-four years and ten months of service. Appellant notified the Division of her husband's passing the following day. On April 15, 2015, the school certified to the Division that decedent's last day of active service was April 8, 2015; thus, decedent passed away less than three months before attaining eligibility for early retirement.

On April 22, 2015, the Division wrote appellant notifying her of her entitled benefits, which included return of pension contributions and a Group Life Insurance Benefit. Appellant

---

[1] Unaware decedent had previously filed his own application, in April 2015, appellant accessed decedent's MBOS account and filed a retirement application on his behalf. According to appellant's certification, she also relied upon an NJEA representative's instructions in selecting the early retirement option. She further certified no one advised either her or decedent about filing for ordinary disability.

contacted the Division in April and May inquiring into the letter's meaning and her benefit eligibility. Eventually, she learned she was only entitled to reimbursement of decedent's contributions rather than survivor retirement benefits because decedent did not survive long enough to attain twenty-five years of service.

Appellant wrote the Division and requested permission to change decedent's retirement application from early retirement to ordinary disability retirement. In her correspondence, she stated, "Had we known how sick my husband really was and how quickly the cancer would cause his death[,] we would have filed for a retirement benefit with a disability status." In response, the Division confirmed its determination that appellant was not entitled to survivor retirement benefits because decedent did not attain twenty-five years of service.

Subsequently, with the assistance of counsel, appellant filed an appeal with the Board. In her appeal, she requested to "reopen, amend, modify, and/or change retroactively" decedent's retirement application, based on the following arguments: (1) decedent "lacked sufficient information to make an informed choice among his retirement options"; (2) decedent "was incapacitated by a combination of physical, psychological and emotional burdens that reasonably prevented him from making an informed decision"; (3) "there was a mutual mistake in his retirement selection based upon

4

the lack of information and the detrimental reliance on the specific instructions which did not conform to [decedent's] true intent, which was to maximize benefits for his wife and children"; (4) "the Board should exercise its discretionary authority to avoid an inequitable outcome affecting a retiree's innocent spouse and family"; and (5) appellant "acted with reasonable diligence in every step of the way in [decedent's] retirement situation before and after his death."

The Board denied appellant's request, finding "no evidence in the record that [decedent] relied upon any advice given to him by the Division to his detriment," and denied culpability for the allegedly poor advice the NJEA provided. The Board also noted decedent failed to attain twenty-five years of service, as required by N.J.S.A. 18A:66-113.1. Finally, it noted the Division was unaware of decedent's terminal illness at the time he submitted his retirement application, but stated decedent "could have availed himself to the Fact Sheets[,] which provide information regarding the different retirement types available and the eligibility criteria required for each selection or seek guidance from the Division."

Appellant appealed the Board's findings, repeating her prior arguments and further contending there existed good cause to alter the application. The Board denied her appeal and issued the final

administrative determination under review. In its determination, the Board found "the statutes and regulations governing the [Teachers' Pension and Annuity Fund] do not permit the Board to grant [appellant's] request to change her husband's retirement type from [e]arly to [o]rdinary [d]isability retirement." It further found, "there was no evidence in the record that [decedent] relied upon any advice given to him by the Division to his detriment. In fact, you advised that [decedent] sought the advice and assistance of the NJEA, who actually filed his retirement application on his behalf."

It also repeated its prior reasoning, finding:

> The Board cannot comment on any advice that was provided to [decedent] by the [NJEA]. The Division was unaware that [decedent] had serious health problems when he filed his application for retirement. However, the Board disagrees with your assertion the Division failed to provide him with sufficient information upon which he could have made an informed decision. Also, he could have availed himself to the Fact Sheets which provide information regarding the different retirement types available and the eligibility criteria required for each selection or seek guidance from the Division.

Finally, the Board again confirmed that decedent did not complete twenty-five years of service, rendering him ineligible for early retirement under N.J.S.A. 18A:66-113.1. Accordingly, it held it

was "without authority" to change decedent's retirement type from early retirement to ordinary disability.  This appeal followed.

## II

On appeal, appellant argues she demonstrated good cause for the Board to allow her to modify her husband's retirement application.  She further argues that, at the time decedent completed his application, he lacked capacity due to severe stress associated with his terminal diagnosis.  Finally, appellant argues the Board's alleged failure to follow the requirements of N.J.A.C. 17:3-6.3 invalidates her husband's retirement benefits selection, thereby allowing her to change the retirement application, and choose ordinary disability benefits.

Our review of an administrative agency's decision is limited. In re Herrmann, 192 N.J. 19, 28 (2007).  A reviewing court may reverse only those administrative decisions that are arbitrary, capricious, unreasonable, or violative of expressed or implicit legislative policies.  In re Musick, 143 N.J. 206, 216 (1996); Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). Unfortunately for appellant, the Board's decision in the instant matter is neither arbitrary nor violative of any legislative policy.

N.J.S.A. 18A:66-113.1 — early retirement — provides in pertinent part:

Should a member resign after having established [twenty-five] years of creditable service before reaching age [sixty], he [or she] may elect 'early retirement,' provided that such election is communicated by such member to the retirement system by filing a written application, duly attested, stating at what time subsequent to the execution and filing thereof he [or she] desires to be retired.

N.J.S.A. 18A:66-41 — ordinary disability allowances — provides:

A member upon retirement for ordinary disability shall receive a retirement allowance which shall consist of:

(a) an annuity which shall be the actuarial equivalent of his accumulated deductions at the time of his retirement together with regular interest after January 1, 1956; and

(b) a pension in the amount which, when added to the member's annuity, will provide a total retirement allowance of 1.64 [percent] of final compensation multiplied by his [or her] number of years of creditable service; and provided further, that in no event shall the allowance be less than 43.6 [percent] of final compensation.

Upon the receipt of proper proofs of the death of a member who has retired on an ordinary disability retirement allowance, there shall be paid to such member's beneficiary, an amount equal to [one-and-one-half] times the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service or in the year of the member's highest contractual salary, whichever is higher . . . .

We first reject appellant's claim that decedent's illness incapacitated him by the time he completed his retirement

application.  The record lacks support for this claim.  Appellant conceded both she and decedent failed to appreciate the progression of her husband's illness when he completed the application.  At that time, early retirement represented the most sensible option because it provided greater benefits both before and after decedent's scheduled retirement.  Although we are sympathetic to appellant's loss, we cannot rely on her hindsight to permit her to alter or amend decedent's retirement application.  Moreover, appellant's evidence supporting her incapacitation argument — a doctor's letter stating terminal illness causes mental and emotional distress — fell short of establishing incapacitation.

Additionally, we are not persuaded by appellant's arguments regarding the Board's alleged failure to follow N.J.A.C. 17:3-6.3(a), which states "a member shall have the right to withdraw, cancel, or change an application for retirement at any time before the member's retirement allowance becomes due and payable . . . ." The plain language of N.J.A.C. 17:3-6.3 indicates it only applies to a retirement application the Board has already approved.  Here, decedent was ineligible for early retirement at the time he passed away; therefore, the Division never approved his application. Moreover, appellant cites inapposite case law to support her assertion.

We conclude the record lacks evidence the Division knew of decedent's medical condition or that the Division provided decedent with any advice upon which he relied; instead, if decedent relied upon any representations, the record indicates they came from the NJEA. Unfortunately, decedent passed away before attaining twenty-five years of service. Thus, the Board did not act arbitrarily or contrary to legislative intent in denying appellant the ability to amend or modify decedent's retirement application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1535-16T3